﻿Citation Nr: AXXXXXXXX
Decision Date: 02/27/20 Archive Date: 02/27/20

DOCKET NO. 200102-51988
DATE: February 27, 2020

ORDER

Entitlement to nonservice-connected pension benefits, to include a special monthly pension based on housebound status or the need of regular aid and attendance, is denied. 

FINDING OF FACT

The preponderance of evidence establishes the Veteran’s countable annual income has exceeded the maximum annual pension rate (MAPR) for a veteran in need of regular aid and attendance with a dependent spouse.

CONCLUSION OF LAW

The criteria for entitlement to nonservice-connected pension benefits, to include a special monthly pension based on housebound status or the need of regular aid and attendance, have not been met. 38 U.S.C. §§ 1503, 1521 (2012); 38 C.F.R. §§ 3.3, 3.23, 3.32, 3.271, 3.272 (2017).

 

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran served on active duty from July 1964 to July 1966.

The decision on appeal was issued in December 2019. In January 2020, the Veteran elected Direct Review under the modernized review system. 84 Fed. Reg. 138, 177 (Jan. 18, 2019) (to be codified at 38 C.F.R. § 19.2(d)).

Entitlement to nonservice-connected pension benefits, to include a special monthly pension based on housebound status or the need of regular aid and attendance.

The Veteran contends that he is entitled to nonservice-connected pension benefits.

A veteran who meets wartime service requirements and who is permanently and totally disabled due to disability not the result of willful misconduct is entitled to a rate of pension set by law, reduced by the amount of his countable income. 38 U.S.C. § 1521; 38 C.F.R. § 3.23. Countable income consists of payments of any kind from any source received during a 12-month annualization period (e.g., a year), unless specifically excluded. 38 C.F.R. § 3.271.

The RO favorably found that the Veteran met the minimum active duty requirements in order to qualify for pension, that he had wartime service, and that his character of service meets the minimum requirements to qualify for pension. 

At issue is whether the countable annual income of the Veteran and his spouse exceeds the applicable maximum annual pension rate (MAPR) with aid and attendance limit set by law for a veteran with a dependent spouse. 

The Board finds that entitlement to nonservice-connected pension benefits, to include a special monthly pension based on housebound status or the need of regular aid and attendance, is not warranted because the preponderance of evidence establishes the countable annual income of the Veteran and his spouse has exceeded the MAPR for a veteran in need of regular aid and attendance with a dependent spouse throughout the appeal period. The Board notes the MAPR for a veteran in need of regular aid and attendance exceeds both the standard MAPR and the MAPR based on housebound status, so the Veteran is not eligible for the lesser benefits by virtue of his ineligibility for the higher rate due to excessive income.

Basic entitlement to pension exists if, among other things, the claimant’s income is not in excess of the MAPR specified in 38 C.F.R. § 3.23. 38 U.S.C. § 1541; 38 C.F.R. § 3.3(a)(3). The MAPR is published in Appendix B of the VA Adjudication Procedures Manual M21-1 and is given the same force and effect as if published in VA regulations. 38 C.F.R. § 3.21. The MAPR is revised every December 1st and is applicable for the following 12-month period. The MAPR shall be reduced by the amount of the Veteran’s countable annual income. 38 U.S.C. §§ 1503, 1521; 38 C.F.R. §§ 3.3, 3.23(b).

Countable income and excludable expenses are based on 12-month annualization periods. 38 C.F.R. §§ 3.271, 3.272. Annualization periods have two types, the initial annualization period and calendar years. After the initial year, countable income is generally based on the calendar year. When the initial annualization period and the first calendar year beginning after the initial award overlap, the greater benefit is awarded.

In determining annual income, all payments of any kind or from any source (including salary, retirement or annuity payments, or similar income, which has been waived) shall be included during the 12-month annualization period in which received, except for listed exclusions. 38 U.S.C. § 1503(a); 38 C.F.R. § 3.271(a). Income from the Social Security Administration (SSA) is not specifically excluded under 38 C.F.R. § 3.272. Such income is therefore included as countable income.

For purposes of calculating pension benefits, total income may be reduced by amounts equal to amounts paid by a claimant for unreimbursed medical expenses that were “in excess of 5 percent of the applicable maximum annual pension rate or rates... as in effect during the 12-month annualization period in which the medical expenses were paid.” 38 C.F.R. § 3.272(g)(1)(iii).

In order to be excluded from income, these medical expenses must be paid during the time period at issue, regardless of when they were incurred. In addition, they must be out-of-pocket expenses, for which the Veteran received no reimbursement, such as through an insurance company. However, the medical insurance premiums themselves, as well as the Medicare deduction, may be applied to reduce countable income. 

VA allows a mileage allowance in computation of a veteran’s unreimbursed medical expenses for pension purposes. The provision of 38 C.F.R. § 70.10(a)(4) authorizes beneficiary travel payments for veterans receiving pension benefits under 38 U.S.C. § 1521 who traveled to or from a VA facility or VA-authorized health care facility for examination, treatment, or care. The reimbursement rate for travel mileage was $0.415 per mile, effective November 17, 2008. See Increase in Mileage Reimbursement Rate and Deductible Amounts in the Beneficiary Travel Program, 73 Fed. Reg. 68498 (Nov. 18, 2008). To date, this reimbursement amount remains the same.

For the purpose of determining initial entitlement or resuming payments on an award that was previously discontinued, the monthly rate of pension shall be computed by reducing the applicable MAPR by the countable income on the effective date of entitlement and dividing the remainder by twelve. 38 C.F.R. § 3.273(a). 

In a March 2019 rating decision, the RO granted the Veteran entitlement to special monthly pension based on the need for aid and attendance from January 31, 2019, or the date of his claim, payable from the first month after entitlement is awarded. However, in a May 2019 decision, the RO determined that from February 1, 2019, the Veteran’s countable income exceeded the MAPR amount. 

Since the May 2019 decision, the Veteran has continuously pursued entitlement to nonservice-connected pension via supplemental claims, appealing the most recent December 20, 2019 decision to the Board. 

As is pertinent for this case, for the initial annualization period, income will be counted from the date of the claim, here January 31, 2019, through the end of the month that is twelve months after that day, or January 31, 2020.

Effective February 1, 2019, the RO calculated the Veteran’s yearly income as $26,790, and his spouse’s yearly income as $13,974, with annualized medical expenses of $13,603, resulting in a countable income of $27,161. The Board notes that the RO did not recalculate the Veteran’s yearly income after a December 1, 2019, SSA cost of living increase, affording the Veteran a protected rate. The Board will not disturb this finding.

The evidence of record reflects that from February 1, 2019, the Veteran was in receipt of monthly SSA income of $2232.50, or $26,790 yearly. The Veteran’s spouse was in receipt of monthly SSA income of $1164.50, or $13,974 yearly. Thus, their combined SSA income totaled $40,764 yearly. The Veteran did not report any other yearly income. 

Regarding medical expenses, in a VA Form 21P-8416 (Medical Expense Report) dated in December 2019, the Veteran reported unreimbursed and projected Medicare Part B premiums totaling $1,632 for the initial annualized year, $1,788 in Medicare Part B premiums for his spouse, and $252 in Medicare Part D premiums for his spouse, totaling $3,672. The Veteran reported additional unreimbursed medical expenses of $9,972 paid between January 31, 2019 and December 16, 2019, the date the medical expense report was signed, and projected prescription co-payments of $496 from December 17, 2019 through January 31, 2020. 

Regarding expenses related to transportation, the Veteran and his spouse reported traveling 1,277 miles between January 31, 2019 and December 16, 2019. Using the established $0.415 mileage reimbursement rate, the amount eligible for reimbursement would be $530 (rounded to the nearest whole dollar amount). 

Unreimbursed medical expenses in excess of five percent of the applicable MAPR (excluding increased pension because of need for aid and attendance or being housebound) are used to reduce countable income. The MAPR effective December 1, 2018 for a Veteran with aid and attendance and one dependent is $26,766. MAPR with one dependent without aid and attendance is $17,724, and five percent of that amount is $886. See Veterans Benefits Administration, Veteran’s Pension Rate Table – Effective December 1, 2018 (https://www.benefits.va.gov/PENSION/rates_veteran_pen18.asp). Therefore, in calculating the Veteran’s countable income, only unreimbursed medical expenses in excess of $866 can be considered.

In this case, the record reflects that the Veteran had unreimbursed medical expenses of $14,670. Deducting $886 from $14,670 results in $13,784 in countable unreimbursed medical expenses. 

Deducting the amount of countable unreimbursed medical expenses from the Veteran’s income of $40,764 results in countable income of $26,980 for the initial annualization period, which exceeds the applicable MAPR for a veteran in need of regular aid and attendance with a dependent spouse of $26,766. 

As demonstrated, the Board has calculated the Veteran’s countable income during the initial annualization period as $26,980. While the RO calculated the Veteran’s countable income as $27,161, upon review of the record, it is not clear which medical expenses the RO included or excluded when calculating the Veteran’s countable unreimbursed medical expenses. A December 2019 calculation sheet reflects that the RO may have included medical expenses totaling $488 from January 3, January 10, and January 15, 2019, but the Board notes that these expenses were incurred prior to the Veteran’s pension claim and cannot be used to reduce the Veteran’s countable income. 

It is also not clear how the RO calculated Medicare premiums for both the Veteran and his spouse. SSA Inquiries dated in March, May, June, and August 2019 reflect that the Veteran and his spouse were both paying $135.50 per month in Medicare premiums. In an August 2019 decision, the RO informed the Veteran that if he disagreed with the amount, he could submit proof of gross benefits by December 31, 2021. On September 3, 2019, the Veteran submitted his and his spouse’s 2019 SSA benefit letters. While the Veteran’s letter confirmed he paid a premium of $135.50 per month, the spouse’s letter showed Medicare Part B and D premiums of $149.40 and $21.10 per month, respectively. Subsequent SSA Inquiries continued to show that the Veteran and his spouse each paid a premium of $135.50 per month, and it does not appear that the RO attempted to resolve this discrepancy. 

Inclusion of medical expenses paid prior to the Veteran’s pension claim and deducting the lower Medicare premium amount of $135.50 reported by SSA Inquiries for the Veteran’s spouse may account for the discrepancy between the RO’s finding that the Veteran had countable unreimbursed medical expenses of $13,603 and the Board’s finding of $13,784.

However, as discussed above, the Board afforded the Veteran the benefit of the doubt and deducted the higher Medicare premium amount reported by the Veteran for his spouse and as reflected by her 2019 SSA benefit letter. Nevertheless, even though the Board deducted the higher amount as reported by the Veteran when calculating the Veteran’s countable unreimbursed medical expenses, the Veteran’s countable income of $26,980 during the initial annualization period still exceeds the applicable MAPR of $26,766.

In sum, the Board finds the preponderance of evidence establishes the Veteran had a countable annual income of $26,980 for the initial annualization period, or from February 1, 2019 through January 31, 2020, which exceeds the applicable MAPR for a veteran in need of regular aid and attendance with a dependent spouse of $26,766. 

As previously noted, ineligibility for a special monthly pension with aid and attendance allowance due to excessive income renders the Veteran ineligible for standard nonservice-connected pension benefits and a special monthly pension based on housebound status because those benefits are paid at lower rates. As such, his appeal of the denial of nonservice-connected pension benefits, to include a special monthly pension based on housebound status or the need of regular aid and attendance, must be denied. See Sabonis v. Brown, 6 Vet. App. 426, 430 (1994).

 

The Veteran is reminded he may file a Supplemental Claim using the instructions provided with this decision for consideration of new and relevant evidence not addressed as part of this appeal. 

 

 

K. Parakkal

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board S. Owen, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.